J-E03002-18

2019 PA Super 64

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AVIS LEE | : | |
| | : | |
| Appellant | : | No. 1891 WDA 2016 |

Appeal from the PCRA Order November 17, 2016
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0005128-1980

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., BOWES, J., PANELLA, J.,
LAZARUS, J., OTT, J., STABILE, J., DUBOW, J., and MURRAY, J.

OPINION BY LAZARUS, J.:                FILED MARCH 01, 2019

Avis Lee appeals from the order dismissing, as untimely, her sixth petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  The issue before this en banc Court is whether, following the United States Supreme Court's decision in Montgomery v. Louisiana, 136 S. Ct. 718 (2016), Lee, who was over the age of 18 at the time of the commission of her offense, may invoke the decision in Miller v. Alabama, 567 U.S. 460 (2012), as an exception to the timeliness requirements of the PCRA.  After our review of the parties' arguments, as well as the amicus brief in support of Lee,[1] we conclude that she cannot invoke Miller to overcome

_____

[1] The Juvenile Law Center, the Defender Association of Philadelphia, the Atlantic Center for Capital Representation, and the Youth Sentencing and Reentry Project have filed a joint amicus brief in support of Lee.

the PCRA time-bar and, therefore, the PCRA court correctly determined it did not have jurisdiction. Accordingly, we are constrained to affirm.

In 1981, a jury convicted Lee of second-degree murder. The convictions stemmed from the shooting death of Robert Walker during an attempted robbery. The evidence at trial established that Lee suggested the robbery to her brother, Dale Stacy Madden, that Lee was designated to serve as the lookout, and that Lee was aware that her brother was carrying a loaded gun. Lee was tried jointly with co-defendants Madden and another man, co-conspirator Arthur Jeffries.

Following conviction, the court properly sentenced Lee to a mandatory life sentence without the possibility of parole. On appeal, this Court affirmed her judgment of sentence. See Commonwealth v. Lee, 838 PGH 1981, (Pa. Super. filed July 16, 1982) (unpublished memorandum). Over the past twenty-two years, Lee has unsuccessfully sought state post-conviction relief and habeas corpus relief in the federal courts.

In 2012, the United States Supreme Court decided Miller, supra, which held mandatory life without parole sentences for those under the age of 18 at the time of their crimes violate the Eighth Amendment's prohibition on "cruel and unusual punishments." Miller, 567 U.S. at 465.[2] The Supreme Court

_____

[2] Juveniles tried as adults remain subject to mandatory minimum sentencing statutes applicable to their adult counterparts, except for the imposition of life imprisonment without parole. See 42 Pa.C.S.A. § 6355(a); 18 Pa.C.S.A. § 1102.1(a), (c) (providing for shorter minimum terms of imprisonment than

held that a juvenile homicide defendant could only be sentenced to life without the possibility of parole if he or she is determined to be permanently incorrigible, irreparably corrupt, or irretrievably depraved. Miller, 567 U.S. at 471. Thereafter, in Montgomery, the Court held that Miller applies retroactively to cases on collateral review, opening the door for those eligible to seek collateral relief. Montgomery, 136 S. Ct. at 732-37.

On March 24, 2016, fifty-nine days after the Court decided Montgomery, Lee filed her sixth PCRA petition, asserting she was a "virtual minor" at the time of her crime and was therefore entitled to the benefit of the constitutional rule announced in Miller and made retroactive by Montgomery. She claimed the sentencing court in her case "did not have the ability to consider the mitigating qualities of [her] youth during sentencing[.]" Amended PCRA Petition, 3/24/16, at 13. Lee argued, therefore, that the rationale underlying the Miller holding, including consideration of characteristics of youth and age-related facts identified as constitutionally significant by the Miller Court, provides support for extending the benefit of Miller to her case.

_____

those mandated in section 1102 where the murders of the first and second degree were committed by juveniles). See also Commonwealth v. Batts, 163 A.3d 410 (Pa. 2017) (Batts II) (in absence of sentencing court reaching conclusion, supported by competent evidence, that juvenile murderer will forever be incorrigible, without any hope for rehabilitation, life-without-parole sentence imposed on juvenile is illegal under Eighth Amendment prohibition against cruel and unusual punishment).

The PCRA court found Miller inapplicable because Lee was not under the age of 18 at the time of her crime. Lee was born on January 23, 1961; on November 2, 1979, when the crime occurred, she was 18 years and nine months old. Finding Lee had failed to prove the applicability of the newly-recognized constitutional right exception to the PCRA time-bar under section 9545(b)(1)(iii), the PCRA court dismissed her petition as untimely.

On appeal, a panel of this Court affirmed. The decision of our Court in this case, bound by precedent on this issue, rejected the "virtual-minor theory" as a basis to invoke section 9545(b)(1)(iii), concluding Lee could not rely on Miller to bring herself within the new constitutional right exception. See 42 Pa.C.S.A. § 9545(b)(1)(iii); see also Commonwealth v. Furgess, 149 A.3d 90, 91–94 (Pa. Super. 2016) (holding petitioners' contention that Miller should be extended to persons over age 18 whose brains were immature at time of their offenses did not bring petition within exception to time-bar for petitions asserting newly-recognized constitutional right); Commonwealth v. Cintora, 69 A.3d 759, 764 (Pa. Super. 2013), abrogation on other grounds recognized in Furgess, supra at 94 (concluding contention that newly-recognized constitutional right should be extended to others does not render petition timely pursuant to section 9545(b)(1)(iii)).[3]

_____

[3] In Cintora, the co-appellants, who were 19 and 21 years old at the time of their crimes, argued that Miller applied to them because a human brain does not fully develop until the age of 25 and because "it would be a violation of equal protection for the courts to treat them[,] or anyone else with immature

On March 9, 2018, this Court granted Lee's petition for reargument en banc to address the issue of whether Miller should apply to those who ground their claims on the Miller rationale -- the "immature brain" theory -- despite Miller's express age limitation. Lee contends that the express age of legal maturity is "arbitrary" and was not central to the Miller rationale, which, in sum, concerns whether the commission of a crime "reflects unfortunate yet transient immaturity" of a young offender rather than "irreparable corruption[.]" Miller, 567 U.S. at 479-80 (quoting Roper v. Simmons, 543 U.S. 551, 573 (2005)). Lee cites to Seminole Tribe of Florida v. Florida, 517 U.S. 44, 67 (1996), and Commonwealth v. Batts, 163 A.3d 410 (Pa. 2017) ("Batts II"), to support her argument that the rationale of Miller should extend the Miller holding to her. Lee further urges this Court to

_____

brains, as adults." Cintora, 69 A.3d at 764. The Cintora Court rejected these arguments, stressing that the co-appellants' "contention that a newly-recognized constitutional right should be extended to others does not render their petition timely pursuant to section 9545(b)(1)(iii)." Id. (emphasis in original). The Furgess Court acknowledged, however, that Cintora's additional holding, that Miller had not been applied retroactively, was "no longer good law" after Montgomery. See Furgess, 149 A.3d at 94 ("Because the U.S. Supreme Court in Montgomery has since held that Miller does apply retroactively, this second reason stated in the Cintora opinion is no longer good law. However, nothing in Montgomery undermines Cintora's holding that petitioners who were older than 18 at the time they committed murder are not within the ambit of the Miller decision, and, therefore may not rely on that decision to bring themselves within the time-bar exception in Section 9545(b)(1)(iii).").

reexamine our prior decisions in Cintora and Furgess in light of Eighth Amendment sentencing jurisprudence espoused in Miller. For the reasons that follow, and despite Lee's compelling arguments, we reaffirm our conclusion that Miller does not afford collateral relief to a petitioner who was over the age of 18 at the time of his or her offense. We also hold that the rationale the Miller Court applied to offenders who were age 14 at the time of their offenses, cannot be applied to defendants over the age of 18 at the time of their offenses in order to satisfy the newly-recognized constitutional right exception to the PCRA time-bar.

Initially, we note that this Court granted reargument en banc in this case on March 9, 2018.[4] Five days later, on March 14, 2018, this Court filed

_____

[4] Lee's petition for reargument sought review of the following claims that she had brought forth in her PCRA petition:

> (1) Mandatory life-without-parole sentence constitutes disproportionate punishment in violation of the Eighth Amendment to the U.S. Constitution because she was developmentally an adolescent and possessed the age -related characteristics of youth that must be taken into consideration prior to imposing a sentence of life-without-parole pursuant to Miller, thus the right established in Miller applies to Ms. Lee, her PCRA petition meets the newly-established constitutional right exception to the PCRA's timeliness requirements;

> (2) Disproportionate punishment in violation of the Eighth Amendment because she did not kill or intend to kill, which rendered her of diminished culpability for purposes of imposing a sentence of life-without-parole, as Miller incorporated the U.S. Supreme Court's proportionality jurisprudence;

its decision in Commonwealth v. Montgomery, 181 A.3d 359 (Pa. Super. 2018) (en banc), appeal denied, 190 A.3d 1134 (Pa. 2018).

In Commonwealth v. Montgomery,[5] petitioner, who was 22 years old at the time he committed murder, for which he was sentenced to life imprisonment without the possibility of parole, argued that his brain was not fully developed.  Petitioner contended that he satisfied the new constitutional rule exception to the PCRA time-bar because he was entitled to relief under Miller, made retroactive by Montgomery.  We disagreed, holding that petitioner failed to show that the new constitutional rule extended to individuals who had committed homicides after they reached the age of 18. Commonwealth v. Montgomery, 181 A.3d at 366.  Relying on Furgess and Cintora, this Court held that simply contending that a newly-recognized constitutional right should be extended to others does not satisfy the new

_____

> (3)    Combined effect of Ms. Lee's youth and developmental characteristics, her experience of extreme childhood and adolescent abuse and trauma, and her lack of intent to kill render her life-without-parole sentence unconstitutional in violation of the Eighth Amendment;
>
> (4)    A violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and Article 1, § 26 of the Pennsylvania Constitution because the arbitrary discrepancy in sentencing between 17- and 18-year-olds under Pennsylvania law lacks a rational basis.

Petition for Reargument, 1/12/18, at 2-5.

[5] For purposes of this Opinion, we refer to our decision as Commonwealth v. Montgomery in order to differentiate it from the United States Supreme Court's decision in Montgomery v. Louisiana.

constitutional rule exception to the PCRA's timeliness requirement. Commonwealth v. Montgomery, 181 A.3d at 366 (citing Furgess, 149 A.3d at 94, and Cintora, 69 A.3d at 764). We also found meritless petitioner's argument that Furgess was distinguishable. We stated:

> [Petitioner] argues that Furgess is distinguishable from the case at bar because in Furgess the petitioner only raised a claim under the Eighth Amendment while he also raises a claim under the Fourteenth Amendment's Equal Protection Clause. This argument, however, is misplaced. Neither the Supreme Court of the United States nor our Supreme Court has held that Miller announced a new rule under the Equal Protection Clause. Instead, Miller only announced a new rule with respect to the Eighth Amendment. Thus, contrary to [petitioner's] assertion, his Equal Protection Clause argument is also an attempt to extend Miller's holding.

Commonwealth v. Montgomery, 181 A.3d at 366 (emphasis added).[6] Notably, we declined petitioner's invitation to overturn Furgess, stating that "the three-judge panel's analysis is correct[.]" Id. at 367.

On the same day this Court filed its decision in Commonwealth v. Montgomery, the Commonwealth filed a motion for clarification of the order granting en banc review in light of that decision. The Commonwealth averred: "[T]this Court rejected Montgomery's attempt to extend the holding in Miller to those who were 18 years of age or older when they committed their crimes under the Eighth Amendment and the Equal Protection Clause of the

_____

[6] In light of Commonwealth v. Montgomery, Lee has affirmatively waived her claim relating to the Equal Protection Clause of the Fourteenth Amendment. See Appellant's Substituted Brief, at 4 n.1.

Fourteenth Amendment." Motion for Clarification, 3/14/18, at ¶ 3. In response, Lee averred that her "rationale versus specific holding" argument renders the right established in Miller applicable to her, and that "the 'right' established in Miller cannot be limited to the narrow 'holding' identified by this Court in Com[monwealth] v. Montgomery, Cintora, and Furgess." Answer to Motion for Clarification, 4/12/18, at ¶¶ 10-18, 29.[7] By order dated April 25, 2018, this Court denied the Commonwealth's application for clarification. In her substituted brief on en banc review, Lee presents her claims as follows:

> I. Did the PCRA court err in rejecting [Lee's] claim that the right established in Miller v. Alabama applies to petitioner who possessed those characteristics of youth identified as constitutionally significant for sentencing purposes by the U.S. Supreme Court?
>
> II. Did the PCRA court abuse its discretion in failing to hold an evidentiary hearing where petitioner had raised issues of material fact that entitle her to relief?

Appellant's Substituted Brief, at 4.

When reviewing the denial of a PCRA petition, we must determine whether the PCRA court's order is supported by the record and free of legal

_____

[7] Lee also suggested that this Court is not bound by our decision in Commonwealth v. Montgomery, "as an en banc court has the authority to overrule the holding of another en banc court." Answer to Motion for Clarification, supra at ¶ 39. While that may be true, we do not find that there is any compelling reason to overturn prior Superior Court precedent in this matter; to the contrary, we find ample precedent provided by both the United States Supreme Court and our Pennsylvania Supreme Court that is binding upon this Court. This argument provides Lee no relief.

error. Commonwealth v. Smith, 181 A.3d 1168, 1174 (Pa. Super. 2018). Generally, we are bound by a PCRA court's credibility determinations. However, with regard to a court's legal conclusions, we apply a de novo standard. Id. However, we first address the timeliness of Lee's petition, as timeliness is a jurisdictional requisite and may not be altered or disregarded in order to address the merits of a petition. See Commonwealth v. Bennett, 930 A.2d 1264, 1267 (Pa. 2007); see also Commonwealth v. Zeigler, 148 A.3d 849 (Pa. Super. 2016).

A PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment of sentence becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence is deemed final at the conclusion of direct review, including discretionary review in the United States Supreme Court and the Pennsylvania Supreme Court, or upon expiration of the time for seeking review. 42 Pa.C.S.A. § 9545(b)(3). Three statutory exceptions to the PCRA time-bar allow for limited circumstances to excuse the late filing of a petition. 42 Pa.C.S.A. §§ 9545(b)(1)(i)-(iii). A petitioner asserting a timeliness exception must file a petition within 60 days of the date the claim could have been presented. 42 Pa.C.S.A. § 9545(b)(2).[8]

_____

[8] On October 24, 2018, the General Assembly amended section 9545(b)(2), extending the time for filing a petition from 60 days to one year from the date the claim could have been presented. See 2018 Pa. Legis. Serv. Act 2018-146 (S.B. 915), effective December 24, 2018. The amendment applies only to claims arising one year before the effective date of this section, December 24, 2017, or thereafter.

"As such, when a PCRA petition is not filed within one year of the expiration of direct review, or not eligible for one of the three limited exceptions, or entitled to one of the exceptions, but not filed within 60 days of the date that the claim could have been first brought, the [PCRA] court has no power to address the substantive merits of a petitioner's PCRA claims." Commonwealth v. Gamboa—Taylor, 753 A.2d 780, 783 (Pa. 2000).

Here, the court imposed Lee's sentence in 1981; Lee filed the instant petition on March 24, 2016, thirty-five years later. See 42 Pa.C.S.A. § 9545(b)(1). Lee's petition is patently untimely. Accordingly, we cannot address the merits of Lee's petition unless she meets one of the enumerated exceptions to the time-bar set forth in section 9545(b)(1)(i)-(iii):

(b) Time for filing petition.--

(1) any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or law of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

- 11 -

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii).

Because the United States Supreme Court's decision in Montgomery established that Miller applies retroactively, and because Lee filed her petition within 60 days of the Montgomery ruling, she has ostensibly satisfied the requirements of section 9545(b)(1)(iii) and(2). The critical issue before us is whether, at this time, Lee can avail herself of the Miller rationale, despite the express age limitation. Lee asks this Court to expand the holding in Miller to apply to her, as one over the age of 18 at the time of her offense who alleges "characteristics of youth" that render her categorically less culpable under Miller. Miller, 567 U.S. at 472-73. Lee characterizes this argument as "rationale versus holding." She argues that Miller must be construed to include not only the narrow holding identified in Cintora and Furgess, and more recently, this Court's en banc decision in Commonwealth v. Montgomery, but also the underlying reasoning, scientific principles, and well-established rationale upon which the Court in Miller and Montgomery relied.[9]

_____

[9] The bases of Miller's categorical prohibition on imposing mandatory life-without-parole sentences on juvenile offenders include: 1) the Court's governing rules of law with respect to Eighth Amendment sentencing jurisprudence, which bar the harshest punishments for classes of offenders with categorically diminished culpability and require individualized sentencing when imposing the harshest punishments; 2) Miller's legal conclusions that the "characteristics of youth, and the way they weaken rationales for punishment, can render a life-without-parole sentence disproportionate," and that a mandatory life-without-parole sentencing scheme "poses too great a risk of disproportionate punishment" by precluding a sentencer from

Further, Lee contends Montgomery is instructive in determining which portions of Miller were "necessary" to the result and therefore encompassed within its ambit. She claims Montgomery eschewed a narrow reading of Miller and recognized that the "foundation stone" for Miller's analysis was the Court's line of precedent holding certain punishments disproportionate when applied to juveniles. Miller, 567 U.S. at 470 n.4.[10] See 42 Pa.C.S.A. § 6302 (defining "child" as an individual who is under the age of 18 years).

_____

considering an offender's age and characteristics of youth prior to imposing the harshest punishments; and 3) science and social science relating to adolescent development. Miller, 567 U.S. at 471-79.

[10] In response to Miller, our General Assembly enacted 18 Pa.C.S.A. § 1102.1 See 2012 P.L. 1655. Section 102.1 provides:

> § 1102.1. Sentence of persons under the age of 18 for murder, murder of an unborn child and murder of a law enforcement officer
>
> (a) First[-]degree murder.--A person who has been convicted after June 24, 2012, of a murder of the first degree, first[-]degree murder of an unborn child or murder of a law enforcement officer of the first degree and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows:
>
>> (1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life.
>>
>> (2) A person who at the time of the commission of the offense was under 15 years of age shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 25 years to life.

_____

(b) Notice.--Reasonable notice to the defendant of the Commonwealth's intention to seek a sentence of life imprisonment without parole under subsection (a) shall be provided after conviction and before sentencing.

(c) Second[-]degree murder.--A person who has been convicted after June 24, 2012, of a murder of the second degree, second[-] degree murder of an unborn child or murder of a law enforcement officer of the second degree and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows:

(1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of imprisonment the minimum of which shall be at least 30 years to life.

(2) A person who at the time of the commission of the offense was under 15 years of age shall be sentenced to a term of imprisonment the minimum of which shall be at least 20 years to life.

(d) Findings.--In determining whether to impose a sentence of life without parole under subsection (a), the court shall consider and make findings on the record regarding the following:

(1) The impact of the offense on each victim, including oral and written victim impact statements made or submitted by family members of the victim detailing the physical, psychological and economic effects of the crime on the victim and the victim's family. A victim impact statement may include comment on the sentence of the defendant.

(2) The impact of the offense on the community.

(3) The threat to the safety of the public or any individual posed by the defendant.

(4) The nature and circumstances of the offense committed by the defendant.

(5) The degree of the defendant's culpability.

_____

(6) Guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing.

(7) Age-related characteristics of the defendant, including:

(i) Age.

(ii) Mental capacity.

(iii) Maturity.

(iv) The degree of criminal sophistication exhibited by the defendant.

(v) The nature and extent of any prior delinquent or criminal history, including the success or failure of any previous attempts by the court to rehabilitate the defendant.

(vi) Probation or institutional reports.

(vii) Other relevant factors.

18 Pa.C.S.A. § 1102.1 (emphasis added). Under the current statutory framework, a juvenile who commits first- or second-degree murder must be charged as an adult. A defendant can then request that his or her case be transferred to the Juvenile Division. See 42 Pa.C.S.A. § 6355. If the trial court denies the transfer request, and the juvenile is convicted of first- or second-degree murder, the trial court must sentence the juvenile to a maximum term of life imprisonment. Moreover, the mandatory minimum sentences set forth above apply only to juveniles convicted of first- or second-degree murder after June 24, 2012. Section 1102.1 does not prescribe minimum sentences for juvenile homicide defendants who were convicted of first- or second-degree murder before June 24, 2012. 18 Pa.C.S.A. § 1102.1. See Commonwealth v. Foust, 180 A.3d 416, 428 (Pa. Super. 2018). See also Rachael F. Eisenberg, As Though They Are Children: Replacing Mandatory Minimums with Individualized Sentencing Determinations for Juveniles in Pennsylvania Criminal Court after Miller v. Alabama, 86 Temp.L.Rev. 15 (2013) (suggesting Pennsylvania's legislative response to Miller is inadequate, proposing unique sentencing model for juveniles that prohibits application of mandatory minimum sentencing statutes, and concluding that Miller "stands for more than its holding[,] in that it prohibits state sentencing schemes that prevent[] those meting out punishment from considering a juvenile's lessened culpability and greater capacity for change,

In Furgess, petitioner sought to extend Miller to those adults whose brains were not fully developed at the time of their offense. See Furgess, 149 A.3d at 94. This argument failed. Reiterating Miller only applies to defendants who were "under the age of 18 at the time of their crimes[,]" Furgess, 149 A.3d at 94, we stated: "[A] contention that a newly-recognized constitutional right should be extended to others does not [satisfy the new constitutional rule exception to the PCRA's timeliness requirement.]" Id. at 95 (internal alteration omitted; emphasis removed), quoting Cintora, 69 A.3d at 764.

Miller says nothing about defendants who were 18 years old or older at the time of the commission of their crimes. The Miller Court applied the scientific studies and principles set forth in Roper v. Simmons, 543 U.S. 551 (2005), and Graham v. Florida, 560 U.S. 48 (2010), and concluded the prohibition against mandatory life sentences pertained to juveniles, in particular, in the case of Miller, to two fourteen year olds. The Miller Court noted the difficulty in distinguishing "at this early age between 'the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.'" Miller,

─────────────────────────────

and run[] afoul of our cases' requirement of individual sentencing for defendants facing the most serious penalties." Id. at 242-43, quoting Miller, 567 U.S. at 465 (internal quotation marks omitted)).

567 U.S. at 479, citing Roper, 543 U.S. at 573, and Graham, 560 U.S. at 68. The Court reasoned: "By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment." Miller, 567 U.S. at 479. The Miller rationale underscored three factors: "characteristics of youth," "disproportionate punishment," and "science and social science relating to adolescent development." Id. at 473-489.

Lee cites to "immature brain" studies that would establish that her brain was underdeveloped at the time of her crime, and that she could not form the requisite intent for second-degree murder. Miller, she argues, prohibits the mandatory imposition of life without parole sentences upon offenders who possess "characteristics of youth" that render them categorically less culpable under the Eighth Amendment. Thus, Lee submits, the Miller rationale applies to her case and, accordingly, provides an exception to the PCRA time-bar. See 42 Pa.C.S.A. § 9545(b)(2)(iii).

There is no question the scientific studies and principles underlying Miller informed its holding. Our Supreme Court, in Batts II, reviewed Miller, Roper and Graham, and discussed those principles at length. The express age limit, however, though arguably not critical to the Miller holding, is, in our opinion, essential to an orderly and practical application of the law. Conceptually, there may not be any statistically significant difference between the mental maturity of a 17-year-old and an 18-year-old, or an 18-year-old and a 19-year-old, and so the question becomes, where do we draw the line?

> Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. [H]owever, a line must be drawn. . . . The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest.

Roper v. Simmons, 543 U.S. at 574 (holding Eighth Amendment to United States Constitution prohibits imposition of death penalty for crime committed by juvenile).

We recognize that the principles underlying the Miller holding are more general; who qualifies as a "juvenile" and whether Miller applies to Lee are better characterized as questions on the merits, not as preliminary jurisdictional questions under section 9545(b)(1)(iii). As compelling as the "rationale" argument is, we find it untenable to extend Miller to one who is over the age of 18 at the time of his or her offense for purposes of satisfying the newly-recognized constitutional right exception in section 9545(b)(1)(iii).

In Commonwealth v. Chambers, 35 A.3d 34 (Pa. Super. 2011), this Court addressed an analogous claim. There, Chambers filed an untimely PCRA petition and sought to establish that he had satisfied the exception contained in section 9545(b)(1)(iii) by arguing that the rationale utilized by the United States Supreme Court establishing a new constitutional right in Graham, supra, entitled him to relief. The Graham Court held unconstitutional a sentence of life imprisonment without parole for a non-homicide juvenile

offender, emphasizing the inherent immaturity and impetuousness of juveniles, and noting that "developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds." Graham, 560 U.S. at 68.

Chambers argued that the rationale of Graham should be extended to apply to a juvenile sentenced to life in prison for a second-degree murder conviction. The Commonwealth argued that Chambers was not entitled to relief because Graham only applies to juveniles convicted of non-homicide offenses, and Chambers was convicted of second-degree murder.

Concluding Chambers misapprehended the scope of the timeliness exception embodied in § 9545(b)(1)(iii), we stated:

> For purposes of deciding whether the timeliness exception to the PCRA based on the creation of a new constitutional right is applicable, the distinction between the holding of a case and its rationale is crucial since only a precise creation of a constitutional right can afford a petitioner relief. . . . [T]he rationale used by the Supreme Court is irrelevant to the evaluation of a § 9545(b)(1)(iii) timeliness exception to the PCRA, as the right must be one that has been expressly recognized by either the Pennsylvania or United States Supreme Court. Thus, for the purpose of the timeliness exception to the PCRA, only the holding of the case is relevant.

Chambers, 35 A.3d at 40-43 (emphasis added). Here, as in Chambers, Lee is not basing her argument on any newly-recognized constitutional right as contemplated by the PCRA. For this reason, we find Lee's reliance on Seminole Tribe, supra, for the principle that stare decisis directs courts to adhere not only to holdings of prior cases, but also to explications of the

governing rules of law, is misplaced. "While rationales that support holdings are used by courts to recognize new rights, this judicial tool is not available to PCRA petitioners." Chambers, supra at 42. See also Seminole Tribe, supra at 67 ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound."). Simply put, that principle is not applicable in the context of collateral review. Further, we do not find Lee's reliance on Batts II compels a different result. Batts II, which involved a defendant who was 14 years old at the time of his offenses, was on direct appeal.

It is not this Court's role to override the gatekeeping function of the PCRA time-bar and create jurisdiction where it does not exist. The PCRA's time limitations "are mandatory and interpreted literally; thus, a court has no authority to extend filing periods except as the statute permits." Commonwealth v. Fahy, 737 A.2d 214, 222 (Pa. 1999). The period for filing a PCRA petition "is not subject to the doctrine of equitable tolling." Id.

We recognize the vast expert research on this issue. If this matter were one of first impression and on direct appeal, we might expound differently. However, we are an error-correcting court. Until the United States Supreme Court or the Pennsylvania Supreme Court recognizes a new constitutional right in a non-juvenile offender, we are bound by precedent.[11] We conclude, as we did in Commonwealth v. Montgomery, Furgess and Cintora, that age is

_____

[11] We would urge our Supreme Court to review this issue in light of the research available even since Batts II was decided in 2017.

the sole factor in determining whether Miller applies to overcome the PCRA time-bar and we decline to extend its categorical holding.

Because Lee has failed to successfully plead or prove that she meets the new constitutional right exception to the timeliness requirements of the PCRA, 42 Pa.C.S.A. § 9545(b)(2)(iii), the court properly concluded that Lee's petition was untimely and it had no jurisdiction to address its merits. We affirm the PCRA court's order.

Order affirmed.

President Judge Gantman, President Judge Emeritus Bender, Judge Bowes, Judge Panella, Judge Ott, Judge Dubow and Judge Murray join in this Opinion.

Judge Stabile concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/1/2019