# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Francis Boyd and David Bradley, :
                Petitioners :
                                     :
                v. :
                                       :
Pennsylvania's Sentencing Scheme for :
Sentencing 18 Year Old's to :
Mandatory Life without Parole :
Attorney General, : No. 543 M.D. 2022
                Respondent : Submitted: December 4, 2023


BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE STACY WALLACE, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION BY
JUDGE COVEY                                   FILED:  February 16, 2024

Before this Court are the Office of Attorney General's (AG) preliminary objections (Preliminary Objections) to Francis Boyd's (Boyd) and David Bradley's (Bradley) (collectively, Petitioners) pro se petition for review filed in this Court's original jurisdiction (Petition).  After review, this Court sustains the AG's Preliminary Objection[1] and dismisses the Petition with prejudice.

Petitioners are inmates currently incarcerated at the State Correctional Institution at Chester.[2]  Boyd was convicted, *inter alia*, of second-degree murder, an

---

[1] The AG asserted five Preliminary Objections; however, this Court sustains only one of them.

[2] www.inmatelocator.cor.pa.gov/#/Result (last visited Feb. 15, 2024).  Boyd's Inmate No. is AF6974.  Bradley's Inmate No. is GS4862.

Although Bradley's name appears in the caption, he signed the Petition (*see* Petition at 41), and the Petition occasionally references *Petitioners* (*see* Petition at 1, 40), the Petition most often refers to *Boyd* and *Petitioner*, and does not offer any facts or claims specific to Bradley.

offense he committed when he was 18 years old.[3]  *See* Petition at 11; *see also Commonwealth v. Boyd* (Pa. Super. No. 2104 EDA 2017, filed July 30, 2018) (*Boyd I*).  As a result of his conviction, Boyd is serving a mandatory sentence of life without parole (LWOP).  *See* Petition at 11; *see also Boyd I*.

On June 25, 2012, the United States (U.S.) Supreme Court ruled in *Miller v. Alabama*, 567 U.S. 460 (2012), that "mandatory [LWOP] for those under the age of 18 at the time of their crimes violates the Eighth Amendment [to the U.S. Constitution's (Eighth Amendment)[4]] prohibition on cruel and unusual punishments."[5]  *Id*. at 465 (quotation marks omitted).  On January 7, 2016, in

---

3    [O]n December 1, 1976, a jury found [Boyd] guilty of second-degree murder, robbery, and related offenses stemming from a shooting and robbery at a Philadelphia bar on June 3-4, 1976.  On February 9, 1977, [Boyd] received a sentence of life imprisonment for second-degree murder, plus an aggregate, consecutive term of 15-30 years' imprisonment for the remaining offenses.  Th[e Pennsylvania Superior] Court affirmed [Boyd's] judgment of sentence on October 19, 1979, and [Boyd] did not pursue any further appeals.  *See Commonwealth v. Boyd*, . . . 412 A.2d 588 (Pa. Super. 1979).  [Boyd's judgment of sentence became final on November 19, 1979.]  We note that [Boyd] was [at least] 18 years old at the time he committed his offenses in June of 1976.

*Commonwealth v. Boyd* (Pa. Super. No. 2104 EDA 2017, filed July 30, 2018) (*Boyd I*), slip op. at 1-2 (internal citations and emphasis omitted).

"[A] court may not ordinarily take judicial notice in one case of the records of another case, whether in another court or its own, even though the contents of those records may be known to the court." *Styers v. Bedford Grange Mut. Ins. Co.*, 900 A.2d 895, 899 (Pa. Super. 2006) (quoting *220 P'ship v. Phila. Elec. Co.*, 650 A.2d 1094, 1097 (Pa. Super. 1994)).  However, a limited exception to that general rule allows "a court [considering preliminary objections] to take notice of a fact which the parties have admitted[,] or which is incorporated into the [petition] by reference to a prior court action." *Guarrasi v. Scott*, 25 A.3d 394, 398 n.3 (Pa. Cmwlth. 2011) (quoting *Styers*, 900 A.2d at 899).  Here, Boyd referenced and incorporated *Boyd I* in his Petition. *See* Petition at 1, 6-7.

4 U.S. CONST. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.").

5 The Pennsylvania Superior Court aptly described:

2

The *Miller* Court applied the scientific studies and principles set forth in *Roper v. Simmons*, 543 U.S. 551 . . . (2005) [(wherein the U.S. Supreme Court barred capital punishment for offenders under 18 years of age)], and *Graham v. Florida*, 560 U.S. 48 . . . (2010) [(wherein the U.S. Supreme Court barred LWOP for offenders under 18 who committed non-homicide offenses)], and concluded the prohibition against mandatory life sentences pertained to juveniles, in particular, in the case of *Miller*, to two [14-]year[-]olds. The *Miller* Court noted the difficulty in distinguishing "at this early age between 'the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.'" *Miller*, 567 U.S. at 479 . . . [(]citing *Roper*, 543 U.S. at 573 . . . and *Graham*, 560 U.S. at 68 . . . [)]. The [U.S. Supreme] Court reasoned: "By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment." *Miller*, 567 U.S. at 479 . . . .

*Commonwealth v. Lee*, 206 A.3d 1, 9 (Pa. Super. 2019) (emphasis omitted).

The *Miller* Court expressly concluded:

[A] judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles. By requiring that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes, the mandatory[]sentencing schemes before us violate this principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment.

*Miller*, 567 U.S. at 489.

Notably, in response to *Miller*, the Pennsylvania General Assembly enacted Section 1102.1(c) of the Crimes Code, which excepted persons under the age of 18 convicted of second-degree murder after June 24, 2012, from the mandate that all persons convicted of second-degree murder shall be sentenced to LWOP. *See* 18 Pa.C.S. § 1102.1(c). Further, the Pennsylvania Superior Court held that

a mandatory sentence of a term of [LWOP] for a juvenile offender in Pennsylvania is a violation of the Eighth Amendment . . . , as well as [a]rticle I, [s]ection 13 of the Pennsylvania Constitution, PA. CONST. art. I, § 13. [If a juvenile offender] was sentenced to a mandatory sentence of [LWOP] for the commission of a second-degree murder as a juvenile, [Pennsylvania] courts are constrained

3

*Montgomery v. Louisiana*, 577 U.S. 190 (2016), the U.S. Supreme Court held that *Miller* was a new substantive constitutional rule that was retroactive on state collateral review. *See Commonwealth v. Cobbs*, 256 A.3d 1192 (Pa. 2021).

Among various amended filings Boyd made between May 2012 and August 2016 in the Philadelphia County Court of Common Pleas (trial court/PCRA court), he sought relief under the Post Conviction Relief Act (PCRA)[6] pursuant to *Miller*.[7] *See Boyd I.* However, on May 30, 2017, the trial court denied Boyd's PCRA filings as untimely and, on July 30, 2018, the Pennsylvania Superior Court affirmed the trial court's denials on appeal. *See Boyd I.* On August 28, 2018, Boyd filed a petition for allowance of appeal in the Pennsylvania Supreme Court, which the Supreme Court denied on July 2, 2019. *See Commonwealth v. Boyd*, 216 A.3d 227 (Pa. 2019). Thereafter,[8] according to the Petition, Boyd filed an Application for Permission to File a Second or Successive Petition Pursuant to Section 2254(b) of the U.S. Code, 28 U.S.C. § 2254(b) (relating to federal habeas corpus applications) (Application), in the U.S. Court of Appeals for the Third Circuit, which that court denied on January 14, 2022.[9] *See* Petition at 2.

On November 14, 2022, Petitioners filed the Petition in this Court, asserting that Pennsylvania's scheme under which 18-year-olds may be sentenced to mandatory LWOP for second-degree murder violates the Eighth Amendment and

---

> to vacate the judgment of sentence and remand the case to the trial court for resentencing.

*Commonwealth v. Knox*, 50 A.3d 732, 745 (Pa. Super. 2012).

[6] 42 Pa.C.S. §§ 9541-9546.

[7] The specific dates on which Boyd filed the relevant PCRA claims are not evident in the Petition.

[8] The filing date is not apparent in the Petition.

[9] The content of the Application is not clear in the Petition.

4

article I, section 13 of the Pennsylvania Constitution.[10]  Petitioners represent in the Petition:

> [Boyd] is not claiming that he falls within the holding of *Miller*.  He concedes that the [U.S.] Constitution does not protect 18-year[-]olds from receiving a mandatory sentence of [LWOP] and that under the current federal precedent, the Eighth Amendment . . . does not prohibit such sentences.   [Boyd] is claiming that under Pennsylvania [s]tate [s]tatutes and the Pennsylvania Constitution, he was not considered an "adult" during the time that he committed his crime, and therefore fall[s] within the ambit of the rationale of *Miller* [(i.e., the immature brain theory)] . . . .  Every Court in the land is bound by the Supremacy Clause [of the U.S. Constitution, U.S. CONST. art. VI, cl. 2].

Petition at 13 (italic emphasis added).  Petitioners specifically contend that since an *adult* is defined under Pennsylvania law as "[a]n individual 21 years of age or over[,]" Section 1991 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1991, an 18-year-old is a minor to whom the *Miller* rationale should apply.  *See* Petition at 11-12.  Petitioners add that *Miller* and *Montgomery* do not preclude Pennsylvania from establishing its own standards to LWOP sentences, *see Jones v. Mississippi*,

_____

[10] Article I, section 13 of the Pennsylvania Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted."  PA. CONST. art. I, § 13.

> "Pennsylvania courts have repeatedly and unanimously held that the Pennsylvania prohibition against cruel and unusual punishment is coextensive with the Eighth [Amendment] and [the] Fourteenth Amendment[] to the [U.S.] Constitution[, U.S. CONST. amend. XIV (relating to due process and equal protection)], and that the Pennsylvania Constitution affords no broader protection against excessive sentences than that provided by the Eighth Amendment . . . ." *Commonwealth v. Elia*, 83 A.3d 254, 267 (Pa. Super. 2013) (citation and internal quotation marks omitted).  Accordingly, we only need to review [Petitioners'] claim under the Eighth Amendment.

*Commonwealth v. Ishankulov*, 275 A.3d 498, 505 (Pa. Super. 2022).

593 U.S. 98 (2021), and they urge this Court to "draw its own line" for persons who were 18 years old when they committed their crimes. Petition at 2.

On January 12, 2023, the AG filed its Preliminary Objections and a brief in support thereof, asserting: (1) Petitioners failed to effectuate proper service on the AG pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1514(c); (2) this Court lacks jurisdiction to hear a collateral challenge to Petitioners' criminal sentences because Petitioners' claims fall outside Section 761 of the Judicial Code, 42 Pa.C.S. § 761; (3) the AG is not a proper party to this action because the AG cannot set the date on which Petitioners would be eligible for parole; (4) Petitioners failed to exhaust their administrative remedies under the PCRA; and (5) Petitioners failed to state a claim upon which relief may be granted (demurrer). On February 15, 2023, Petitioners filed an answer opposing the AG's Preliminary Objections. Petitioners did not file a brief opposing the Preliminary Objections.[11]

Initially, Rule 1516(b) authorizes the filing of preliminary objections to an original jurisdiction petition for review. *See* Pa.R.A.P. 1516(b).

> In ruling on preliminary objections, [this Court] must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. The Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them.
>
> A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the [petition for review] and all inferences reasonably deducible therefrom. It tests the

---

[11] By March 3, 2023 Order, this Court directed Petitioners to file their opposing brief on or before April 3, 2023. By May 9, 2023 Order, this Court directed Petitioners to file their opposing brief on or before May 23, 2023, or the Court would proceed to decide the matter without it. Because Petitioners did not timely file an opposing brief, this Court will proceed to decide the matter without it.

6

legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted. When ruling on a demurrer, a court must confine its analysis to the [petition for review].

*Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010) (citations omitted). Nonetheless, "[c]ourts reviewing preliminary objections may not only consider the facts pled in the [petition for review], but also any documents or exhibits attached to it." *Foxe v. Pa. Dep't of Corr.*, 214 A.3d 308, 310 n.1 (Pa. Cmwlth. 2019) (quoting *Allen v. Dep't of Corr.*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014)).

Because it is dispositive, this Court first addresses whether this Court lacks jurisdiction over this matter (Second Preliminary Objection). The Pennsylvania Supreme Court has articulated:

Article V, [s]ection 4 of the Pennsylvania Constitution, adopted April 23, 1968, created the Commonwealth Court and stated that [it] shall "have such jurisdiction as shall be provided by law." [PA. CONST. art. V, § 4.] The General Assembly enacted Section 761 of the Judicial Code, which conferred the Commonwealth Court with original and exclusive jurisdiction over certain cases, including civil actions or proceedings against government agencies and officials. The conferral of original and exclusive jurisdiction creates subject[ ]matter jurisdiction in the Commonwealth Court for the specified classes of claims.

*Scott v. Pa. Bd. of Prob. & Parole*, 284 A.3d 178, 186 (Pa. 2022). Section 761(a) of the Judicial Code provides, in relevant part:

**The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings**:

(1) Against the Commonwealth government, including any officer thereof, acting in his official capacity, **except**:

(i) **actions or proceedings in the nature of applications for** a writ of habeas corpus or **post**-

7

> **conviction relief** not ancillary to proceedings within the appellate jurisdiction of the court[.[12]]

42 Pa.C.S. § 761(a) (bold and underline emphasis added).

Correspondingly, the General Assembly created the PCRA as "the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including habeas corpus and coram nobis." Section 9542 of the PCRA, 42 Pa.C.S. § 9542. Moreover, Section 9545(a) of the PCRA specifies, in pertinent part: "**Original jurisdiction over a proceeding under** [**the PCRA**] **shall be in the court of common pleas**." 42 Pa.C.S. § 9545(a) (emphasis added). Accordingly, this Court lacks jurisdiction to decide this matter and may transfer it to the proper trial court. *See Dockery v. Wolf*, 259 A.3d 566 (Pa. Cmwlth. 2021).

However, Section 9545(b)(1) of the PCRA provides that petitions filed pursuant to the PCRA, including a second or subsequent petition, generally "shall be filed within one year of the date the judgment becomes final." 42 Pa.C.S. § 9545(b)(1). Section 9545(b)(1) of the PCRA offers exceptions to the PCRA petition filing deadline only when

> the petition alleges and the petitioner proves that:
>
> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the [U.S.];
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the [U.S.] or the

---

[12] "Postconviction relief . . . is not part of the criminal proceeding itself, and it is . . . considered to be civil in nature." *Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987).

8

Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1). Thus, in those three limited circumstances, "[a]ny petition invoking an exception provided in [Section 9545(b)(1) of the PCRA] . . . shall be filed within one year of the date the claim could have been presented."[13] Section 9545(b)(2) of the PCRA, 42 Pa.C.S. § 9545(b)(2).

Regardless of which limitations period applies (one year after final judgment or one year after the U.S. or Pennsylvania Supreme Court recognizes a new, retroactive constitutional right), "[i]t is well settled that '[t]he PCRA's **timeliness requirements are jurisdictional in nature and must be strictly construed**; **courts may not address the merits of the issues raised in a petition if it is not timely filed**.'" *Commonwealth v. Towles*, 300 A.3d 400, 415 (Pa. 2023) (quoting *Commonwealth v. Abu-Jamal*, 941 A.2d 1263, 1267-68 (Pa. 2008) (emphasis added)); *see also Commonwealth v. McGee*, 302 A.3d 659, 667 (Pa. 2023) (quoting *Commonwealth v. Jackson*, 30 A.3d 516, 523 (Pa. Super. 2011) ("[W]hen the one-year filing deadline of [S]ection 9545 [of the PCRA] has expired, and no statutory exception has been pled or proven, a PCRA court cannot invoke inherent jurisdiction to correct orders, judgments and decrees, even if the error is patent and obvious.")); *Commonwealth v. Lee*, 206 A.3d 1, 11 (Pa. Super. 2019) ("It is not [a] [c]ourt's role to override the gatekeeping function of the PCRA time-bar and create jurisdiction where it does not exist."). "The PCRA's strict one-year limit on filing a petition reflects the General Assembly's intent to accord finality to the criminal process." *Scott*, 284 A.3d at 187.

---

[13] Until October 24, 2018, when the General Assembly amended Section 9545(b)(2) of the PCRA, the time for filing a petition was 60 days from the date the claim could have been presented. *See* 2018 Pa. Legis. Serv. Act 2018-146 (S.B. 915), effective as of December 24, 2018. The amendment applies only to claims arising one year before the December 24, 2018 effective date or thereafter.

In the instant matter, Boyd's judgment of sentence became final on November 19, 1979. Boyd could not have filed a PCRA petition based on *Miller* until *Miller* was decided on June 25, 2012. The *Boyd I* Court clearly reviewed Boyd's claim under the newly-recognized constitutional right exception in Section 9545(b)(1)(iii) of the PCRA, based on *Miller*, at some point after the *Montgomery* Court ruled in 2016 that *Miller* applied retroactively. The *Boyd I* Court declared that, although *Miller* applied retroactively,

> [Boyd] has not demonstrated that the rule created in *Miller* applies to him. . . . [Boyd] was - at best - nearly [18½] years old at the time of the underlying crimes. Th[e Pennsylvania Superior] Court has explained that "petitioners who were older than 18 at the time they committed murder are not within the ambit of the *Miller* decision and therefore may not rely on that decision to bring themselves within the time-bar exception in Section 9545(b)(1)(iii) [of the PCRA]." *See Commonwealth v. Furgess*, 149 A.3d 90, 94 (Pa. Super. 2016); *see also Commonwealth v. Woods*, 179 A.3d 37, 38, 44 (Pa. Super. 2017) (determining that *Miller* did not apply to the appellant's case where the appellant was 18 years and 36 days old when he committed his crime). Thus, [Boyd] cannot establish a timeliness exception on this basis.

*Boyd I*, slip op. at 8-9. The *Boyd I* Court concluded that since Boyd's claim did not fall under the exception in Section 9545(b)(1)(iii) of the PCRA, it was untimely and, thus, the Superior Court lacked jurisdiction to proceed to decide the merits of Boyd's PCRA claims.

In the current PCRA Petition, relying on *Lee*, Petitioners assert that because their brains were underdeveloped when they committed their crimes, they could not form the requisite intent for second-degree murder and, applying *Miller's* rationale (rather than its *holding*), they were less culpable and, therefore, entitled to

relief.[14]  According to Petitioners, "this Court can do what the [*Lee* C]ourt couldn't do, which is hear [P]etitioner[s'] claims."  Petition at 17.

Although it is not clear in the Petition precisely when Boyd amended his 2012 PCRA petition to invoke *Miller*, the *Boyd I* Court clearly determined in 2018 that Boyd's claim was late-filed.  It is no less late-filed now.  Eleven years have passed since the U.S. Supreme Court decided *Miller*.  Seven years have passed since the U.S. Supreme Court ruled that *Miller* applied retroactively.  *Lee* cannot satisfy Section 9545(b)(1)(iii) of the PCRA because it did not present "a constitutional right that was recognized by the Supreme Court of the [U.S.] or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively."  42 Pa.C.S. § 9545(b)(1)(iii).  However, even if this Court was to consider that Petitioners based their new claim on *Lee's* immature brain theory, *Lee* was decided on March 1, 2019, and Petitioners filed the subject Petition more than three and one-half years later, on November 14, 2022.[15]

---

[14]  Lee ask[ed] th[e Pennsylvania Superior] Court to expand the holding in *Miller* to apply to her, as one over the age of 18 at the time of her offense who allege[d] "characteristics of youth" that render[ed] her categorically less culpable under *Miller*.  *Miller*, 567 U.S. at 472-73 . . . .  Lee characterize[d] this argument as "rationale versus holding."  She argue[d] that *Miller* must be construed to include not only the narrow holding identified in [*Commonwealth v.*] *Cintora*[, 69 A.3d 759 (Pa. Super. 2013), *abrogation on other grounds recognized* in *Furgess*] and *Furgess*, and more recently, th[e] [Superior] Court's en banc decision in *. . . Montgomery*, but also the underlying reasoning, scientific principles, and well-established rationale upon which the [U.S. Supreme] Court in *Miller* and *Montgomery* relied.

*Lee*, 206 A.3d at 7 (emphasis omitted).

[15] *Lee* also fails to wholly support Petitioners' claim on the merits.  The *Lee* Court concluded that *Miller's* prohibition on mandatory LWOP sentences for juvenile offenders as cruel and unusual punishment did not extend to Lee who, despite her argument that her brain was

Moreover, the *Lee* Court observed:

In *Commonwealth v. Chambers*, 35 A.3d 34 (Pa. Super. 2011), . . . Chambers filed an untimely PCRA petition and sought to establish that he had satisfied the exception contained in [S]ection 9545(b)(1)(iii) [of the PCRA] by arguing that the *rationale* utilized by the [U.S.] Supreme Court establishing a new constitutional right in *Graham* [*v. Florida*, 560 U.S. 48 (2010)], entitled him to relief. . . .

---

underdeveloped at time of her crime, like Petitioners, was over the age of 18 when she committed second-degree murder. The *Lee* Court reasoned:

The express age limit, however, though arguably not critical to the *Miller* holding, is, in our opinion, essential to an orderly and practical application of the law. Conceptually, there may not be any statistically significant difference between the mental maturity of a 17-year-old and an 18-year-old, or an 18-year-old and a 19-year-old, and so the question becomes, where do we draw the line?

Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. [H]owever, a line must be drawn. . . . The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest.

*Roper* . . . , 543 U.S. at 574 . . . (holding Eighth Amendment . . . prohibits imposition of death penalty for crime committed by juvenile).

We recognize that the principles underlying the *Miller* holding are more general; who qualifies as a "juvenile" and whether *Miller* applies to Lee are better characterized as questions on the merits, not as preliminary jurisdictional questions under [S]ection 9545(b)(1)(iii) [of the PCRA]. As compelling as the "rationale" argument is, we find it untenable to extend *Miller* to one who is over the age of 18 at the time of his or her offense for purposes of satisfying the newly-recognized constitutional right exception in [S]ection 9545(b)(1)(iii) [of the PCRA].

*Lee*, 206 A.3d at 9-10 (emphasis omitted).

. . . .

Concluding Chambers misapprehended the scope of the timeliness exception embodied in [Section] 9545(b)(1)(iii) [of the PCRA], [the Pennsylvania Superior Court] stated:

> For purposes of deciding whether the timeliness exception to the PCRA based on the creation of a new constitutional right is applicable, *the distinction between the holding of a case and its rationale is crucial since only a precise creation of a constitutional right can afford a petitioner relief. . . .* [*T*]*he rationale used by the* [*U.S.*] *Supreme Court is irrelevant to the evaluation of a* [*Section*] *9545(b)(1)(iii)* [*of the PCRA*] *timeliness exception to the PCRA, as the right must be one that has been expressly recognized by either the Pennsylvania or* [*U.S.*] *Supreme Court.* Thus, **for the purpose of the timeliness exception to the PCRA**, **only the holding of the case is relevant**.

*Chambers*, 35 A.3d at 40-43 ([italic] emphasis added). Here, as in *Chambers*, Lee is not basing her argument on any newly-recognized constitutional right *as contemplated by the PCRA.* For this reason, we find Lee's reliance on . . . the principle that *stare decisis* directs courts to adhere not only to holdings of prior cases, but also to explications of the governing rules of law, is misplaced. "**While rationales that support holdings are used by courts to recognize new rights**, **this judicial tool is not available to PCRA petitioners**." *Chambers*, [35 A.3d] at 42. *See also Seminole Tribe* [*of Fl. v. Florida*], 517 U.S. [44,] 67 [(1996)] ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound."). Simply put, that principle is not applicable in the context of collateral review.

*Lee*, 206 A.3d at 10-11 (bold citation emphasis omitted; bold text emphasis added). Petitioners' same arguments are similarly unavailing here.

Because the Petition is late-filed and in the absence of an applicable exception under Section 9545(b)(1) of the PCRA, even if this Court transferred the

13

matter to the trial court, the trial court "cannot invoke inherent jurisdiction" to rule on the Petition. *McGee*, 302 A.3d at 667 (quoting *Jackson*, 30 A.3d at 523). Accordingly, notwithstanding that this Court *could* transfer this matter to the trial court, *see Dockery*, the Pennsylvania Supreme Court has held that transfer of a case to the trial court/PCRA court *is not warranted* where a PCRA petition would be dismissed as untimely. *See Scott*. "As there is no possibility that the result would be any different, judicial economy dictates that" this Court sustain the Second Preliminary Objection and dismiss the Petition. *Id*. at 198.

Based on the foregoing, the AG's Second Preliminary Objection is sustained, and the Petition is dismissed with prejudice.

_____
ANNE E. COVEY, Judge

14

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Francis Boyd and David Bradley,   :
                 Petitioners   :
                          :

          v.                   :
                          :

Pennsylvania's Sentencing Scheme for   :
Sentencing 18 Year Old's to   :
Mandatory Life without Parole   :
Attorney General,                 :     No. 543 M.D. 2022
               Respondent   :

## O R D E R

AND NOW, this 16th day of February, 2024, the Office of Attorney General's second preliminary objection is SUSTAINED, and Francis Boyd's and David Bradley's petition for review is DISMISSED with prejudice.

_____
ANNE E. COVEY, Judge