J-S56009-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GUY MATTHEWS | : | |
| | : | |
| Appellant | : | No. 2700 EDA 2018 |

Appeal from the PCRA Order Entered August 16, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0438784-1990

BEFORE:  PANELLA, P.J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY PANELLA, P.J.:          **FILED DECEMBER 06, 2019**

Guy Matthews appeals *pro se* from the August 16, 2018 order entered in the Philadelphia County Court of Common Pleas, which dismissed as untimely his second petition filed pursuant to the Post Conviction Relief Act ("PCRA"). **See** 42 Pa.C.S.A. §§ 9541-9546. Matthews's petition is facially untimely, and although he asserts all three statutory exceptions to the PCRA's time-bar, Matthews has failed to prove that any are either valid or applicable. Therefore, the PCRA court correctly concluded that it lacked jurisdiction to consider the merits of his appeal. Accordingly, we affirm.

As recounted by the PCRA court:

Guy Matthews … was arrested and subsequently charged in connection with the [February 2,] 1989 fatal shooting of James Sussewell. [Matthews] was tried alongside co-defendant Craig Haynes. On August 24, 1990, following a jury trial …, [Matthews] was convicted of first-degree murder and related charges. On April

4, 1991, the trial court sentenced [Matthews] to life imprisonment for first-degree murder.

On August 19, 1993, the Superior Court affirmed [Matthews's] judgment of sentence. On January 14, 1994, the Pennsylvania Supreme Court denied [Matthews's] request for allowance of appeal. [Matthews] did not filed a petition for writ of *certiorari* to the United States Supreme Court.

On December 19, 1996, [Matthews] filed his first *pro se* PCRA petition. Appointed counsel … subsequently filed an amended petition. On October 30, 2002, the PCRA court dismissed [Matthews'] counseled petition. On February 20, 2004, the Superior Court affirmed the PCRA court's denial of post-conviction relief. On December 3, 2004, the Supreme Court of Pennsylvania denied [Matthews's] request for *allocator*.

On March 22, 2016, [Matthews] filed the instant *pro se* PCRA petition. [Matthews] also submitted two supplemental filings[,] which were reviewed jointly with his petition. Pursuant to Pennsylvania Rule of Criminal Procedure 907, [Matthews] was served notice of the PCRA court's intention to dismiss his petition on July 20, 2018[,] and on August 7, 2018, [Matthews] submitted a response to [the] PCRA court's Rule 907 notice. On August 16, 2018, [the] PCRA court dismissed the instant PCRA petition as untimely. On September 5, 2018, the instant notice of appeal was timely filed.

PCRA Court Opinion, 1/18/19, at 1-2 (footnotes omitted).

Matthews raises the following issues for our review:

1) Did the PCRA court err in finding that the petition did not meet the newly discovered fact timeliness exception pursuant to 42 Pa.C.S.A. § 9545(b)(1)(ii)?

2) Did the PCRA court err in concluding that the United States Supreme Court decision ***Montgomery v. Louisiana***, 136 S. Ct. 718 (2016), is inapplicable to Matthews's mandatory life sentence without the possibility of parole?

***See*** Appellant's Brief, Statement of Questions Involved (unnumbered page).[1]

Turning to Matthews's petition, we note that we review the denial of post-conviction collateral relief to determine whether the PCRA court's findings are supported by the record and free from legal error. ***See Commonwealth v. Small***, 189 A.3d 961, 971 (Pa. 2018). However, prior to reaching the merits of Matthews's claims, we must first consider the timeliness of his PCRA petition. ***See Commonwealth v. Miller***, 102 A.3d 988, 992 (Pa. Super. 2014). The time limitations of the PCRA are jurisdictional in nature and, as such, a court cannot address the merits of an untimely petition. ***See Commonwealth v. Robinson***, 837 A.2d 1157, 1161 (Pa. 2003). All PCRA petitions "including a second or subsequent petition shall be filed within one year of the date the judgment [of sentence] becomes final." 42 Pa.C.S.A. § 9545(b)(1).

Matthews's original judgment of sentence became final on April 14, 1994. This date is ninety days after our Supreme Court denied his request for allowance of appeal, and Matthews did not seek any further review from the United States Supreme Court. ***See*** 42 Pa.C.S.A. § 9545(b)(3) (identifying that "a judgment of sentence becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and

---

[1] For ease of disposition and since both invoke the same exception section, we have consolidated Matthews's issues one and three as included in his statement of questions involved and have placed the combined issue as the second to be addressed.

the Supreme Court of Pennsylvania, or at the expiration of time for seeking

the review"); **see also** U.S. Sup. Ct. R. 13 (indicating that a petition for a writ

of *certiorari* must be filed with the Clerk of the United States Supreme Court

within ninety days after discretionary review is denied by the state court of

last resort). Accordingly, Matthews's petition, filed over two decades later, is

patently untimely.[2] As such, the PCRA court lacked jurisdiction to review

Matthews's petition unless he was able to successfully plead and prove an

exception the PCRA's time-bar.

To surmount the PCRA's time-bar, a petitioner must allege and prove

one of three exceptions. **See** 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). Here, as best

can be discerned, Matthews argues that his petition qualifies for all three

exceptions. Quoted in their entirety, the exceptions provide that:

**(b)  Time for filing petition.--**

(1)  Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this

---

[2] When, as here, the judgment of sentence became final prior to January 16, 1996 – the effective date of the 1995 amendments to the PCRA – a first PCRA petition would be deemed timely filed if it was filed within one year of that date. **See Commonwealth v. Fahy**, 737 A.2d 214 (Pa. 1999). However, this grace period does not apply to serial petitions such as this petition. **See Commonwealth v. Crawley**, 739 A.2d 108 (Pa. 1999). Further, it is clear that this petition was not timely filed under this provision in any event.

Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). Further, even if any of these exceptions apply, the petition must have been filed within, at most, one year of the date the claim could have been presented. *See* 42 Pa.C.S.A. § 9545(b)(2).[3]

To the extent Matthews attempts to rely upon the "governmental interference" exception, *see* 42 Pa.C.S.A. § 9545(b)(1)(i), by contending there has been a *Brady* violation by the prosecution, *see* 83 S. Ct. 1194 (1963), Matthews has not included this question in his statement of questions involved. Therefore, our ability to conclude that this subsection is applicable has arguably been waived. *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly

---

[3] On October 24, 2018, the General Assembly amended section 9545(b)(2) of the PCRA statute to expand the time for filing a petition from 60 days to one year from the date a claim could have been presented. *See* 2018 Pa.Legis.Serv.Act 2018-146(S.B. 915), effective December 24, 2018. The amendment applies only to claims arising one year before the effective date of this section, *i.e.*, December 24, 2017, or thereafter. Instantly, Matthews filed his petition in 2016. Therefore, the amendment is inapplicable to Matthews's claim.

suggested thereby."). However, even on its merits, Matthews has failed to demonstrate there has been a **Brady** violation to serve as a foundation for governmental interference.

Matthews contends that the piece of evidence withheld from him at trial was "an interview given to and recorded by Philadelphia police detectives by a notorious underworld figure named Aaron Jones[,] the leader of [a] gang faction in Philadelphia." Appellant's Brief, at 6. Matthews avers that the Jones interview specifically names another, and not Matthews, as the person responsible for the crimes for which he was convicted. **See id**., at 7. However, Matthews concedes that Jones named him as a probable participant in the criminal activity. **See id**.

In order to demonstrate a **Brady** violation, Matthews would need to show that: 1) the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; 2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and 3) prejudice ensued. **See Commonwealth v. Burke**, 781 A.2d 1136, 1141 (Pa. 2001) (citation omitted).

As best can be discerned, in the interview with police, Jones stated that he does not know much about a seemingly separate August 10, 1989 shooting inside the Tobbins Inn because he was not there when it occurred. **See** Jones Interview, 8/15/89, at 1 (unpaginated). Speculating, Jones maintained that Matthews's co-defendant, Haynes, was "the only one crazy enough to do it."

*Id*. However, Jones indicated that Matthews was probably with him. *See id*. Further, Jones implicated Haynes "and his people" (presumably inclusive of Matthews) when "they did the same thing … when they shot up the [V]olvo and killed the boy. They thought they had [the boy]." *Id*., at 2 (unpaginated).[4] Jones also stated that while no one told him who committed the August 10 shooting, he knew it was Haynes. *See id*.

We are not convinced there has been a *Brady* violation for at least two reasons. First, the evidence simply does not, in any way, exculpate Matthews of the crimes he has been found guilty of committing and is, in fact, largely irrelevant. Although he was speaking to an unrelated shooting, Jones admitted that he was not there when that shooting occurred nor had he heard from anybody else as to who committed that shooting. Other than having a mere uncorroborated hunch that Haynes was the shooter in that instance, Jones, by his own words, was simply not in a position to attest to Matthews's innocence in the February 2 shooting. *See Commonwealth v. Bond*, 819 A.2d 33, 50 (Pa. 2002) ("A witness's lack of knowledge about a crime is neither inculpatory nor exculpatory; it is, by definition, an irrelevancy.").

If anything, Jones's interview adds further support for Matthews's involvement or inculpation in the crimes for which he was convicted, as Jones's

_____

[4] This shooting occurred at 29th & Chalmers. *See* Jones Interview, at 1. Matthews was convicted of, *inter alia*, murder from a fatal shooting occurring at this intersection.

statement implicitly places Matthews at the scene of the crime and then proceeds to describe his participation in the February 2 killing. ***See*** Jones Interview, at 2 (employing the pronoun "they" to describe who shot up the Volvo and killed the boy after referring to Matthews, by name, in the preceding sentence and also identifying that Haynes "gets other people to do his shit"). Simply put, the solitary paragraph in the Jones interview dedicated to what we have to assume is the February 2 shooting does not provide any support for the contention that Matthews was not guilty of wrongdoing. Accordingly, there has been no ***Brady*** violation.

Second, although he was required to do so, Matthews provides no support to demonstrate that the prosecution suppressed the Jones interview at or before trial. Instead, Matthews seems to indicate that because this interview is not contained within the trial-related discovery materials, this nonexistence inherently means that the prosecution inadvertently suppressed evidence. However, absent even a singular citation to the trial record, simply stating that there is an absence of this interview is insufficient to establish a ***Brady*** violation. ***See Commonwealth v. Copenhefer***, 719 A.2d 242, 259 (Pa. 1998) (identifying that an appellant "must prove, by reference to the record, that evidence was withheld or suppressed by the prosecution") (citation omitted). For this reason, too, Matthews's ***Brady*** claim fails.

Even if there had been inadvertent suppression, "when a ***Brady*** claim is advanced under the PCRA, an appellant can only obtain relief by establishing

that the violation of his Constitutional right to due process so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Id*. (citations and quotation marks omitted). Given the content of the interview itself, which lacks any arguable basis to provide Matthews with exculpatory information, we find nothing in the record to support the position that the alleged withholding of the interview prevented Matthews from advancing his due process rights or that his adjudication of guilt was somehow unreliable.

Similarly, in utilizing the same interview, Matthews's attempt at overcoming the "previously unknown facts" exception fails, too.

> The [unknown facts] timeliness exception set forth at Section 9545(b)(1)(ii) has often mistakenly been referred to as the "after-discovered evidence" exception. This shorthand reference was a misnomer, since the plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of after-discovered evidence. Rather, as an initial jurisdictional threshold, Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts. Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered-evidence claim.

*Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa. Super. 2015) (internal citations and quotation marks omitted). We assume, without actually deciding, that Matthews, having received the Jones interview on February 12, 2018,

exercised due diligence in asserting this exception.[5] However, to constitute facts that were unknown to a petitioner, the information "must not be facts that were previously known but are now presented through a newly discovered source." ***Commonwealth v. Edmiston***, 65 A.3d 339, 352 (Pa. 2013).

Here, the alleged "fact" can be distilled down into the sentence: "[Haynes] and his people did the same thing at 29th & Chalmers when they shot up the [V]olvo and killed the boy." Jones Interview, at 1. As stated, *supra*, having just mentioned him in the sentence prior, Jones's reference to "they" necessarily includes Matthews. Matthews's contention that the Jones interview identifies Haynes as the shooter in the incident for which Matthews was charged is simply unavailing and belies the content of his statement, especially when Jones emphasizes that Haynes gets other people to do his bidding in that same paragraph. **See** Jones Interview, at 1. Therefore, Jones's equivocation as to who the actual shooter was, combined with the fact that Haynes was a charged co-conspirator in the crime, renders the Jones interview not new information, but known information coming from a newly discovered source. As such, it is not a previously unknown fact within the meaning of 42

---

[5] Although Matthews indicates that he obtained the Jones interview on February 12, 2018, the affidavit attached to his amended PCRA petition states that his brother, Gill Matthews, "recently obtained the Philadelphia Police Investigation Interview Record of Aaron Jones. The interview was discovered by Jackie Chester, an associate with background in security and investigations, and sent to me via the internet." Motion to Amend/Supplement PCRA Petition, Affidavit. There is no indication provided as to when Gill Matthews first learned of or obtained the Jones interview.

Pa.C.S.A. § 9545(b)(1)(ii), and Matthews has failed to overcome the previously unknown facts exception to the PCRA's time-bar.

As to Matthews's assertion that *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), apply retroactively to his case and that therefore he can avail himself of 42 Pa.C.S.A. § 9545(b)(1)(iii), the retroactivity exception to the PCRA's time-bar, Matthews is mistaken. Matthews identifies that his correct birth date is April 8, 1963. *See* Appellant's Brief, at 15. Therefore, on February 2, 1989, Appellant would have been twenty-five years and ten months old at the time when he committed his various offenses.

In *Miller*, the United States Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 567 U.S. at 465. Some six years later, the Court in *Montgomery* found that *Miller* announced a substantive rule of constitutional law and proceeded to give *Miller* retroactive applicability. *See* 136 S. Ct. at 736. However, neither case established any kind of precedent for those over the age of eighteen.

In order for the retroactivity exception to be applicable, there must be: 1) a constitutional right recognized by our Supreme Court or the United States Supreme Court; and 2) a holding by either our Supreme Court or the United States Supreme Court that the recognized constitutional right applies retroactively. *See* 42 Pa.C.S.A. § 9545(b)(1)(iii). While Matthews "asserts

that the medical and scientific determinations adopted in *Miller* are applicable to him at the age of twenty-five," our Supreme Court and the United States Supreme Court have not, in any subsequent opinion, extended the holding of *Miller* to encompass any classification or group of people over the age of eighteen. Absent an extension of *Miller* or indicia that either court has both established a new constitutional right and decided to apply it retroactively, we are without the authority to go beyond the dictates of *Miller*. In fact, as we stated recently, "*Miller* does not afford collateral relief to a petitioner who was over the age of 18 at the time of his or her offense." *Commonwealth v. Lee*, 206 A.3d 1, 4 (Pa. Super. 2019) (*en banc*); *see also Commonwealth v. Montgomery*, 181 A.3d 359, 366 (Pa. Super. 2018) (*en banc*) (*Montgomery* … did not extend *Miller*'s holding to those individuals who committed homicides after they reached the age of 18.").

Because Matthews has failed to successfully plead or prove that he meets any of the exceptions to the timeliness requirements of the PCRA, the court properly concluded that Matthews's petition was untimely and it had no jurisdiction to address its merits. Therefore, we affirm the PCRA court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/6/19