J-S30004-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ROBERT KENNEDY | : | |
| | : | |
| Appellant | : | No. 1490 WDA 2019 |

Appeal from the PCRA Order Entered September 11, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0003178-2007

BEFORE: MURRAY, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.: **FILED JULY 17, 2020**

Robert Kennedy (Appellant) appeals from the order dismissing his third petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.

The Honorable John A. Zottola presided at Appellant's non-jury trial in 2008, and dismissed Appellant's prior two PCRA petitions. In dismissing the third petition, Judge Zottola chronicled the case history as follows:

> On August 27, 2008, following a non-jury trial, [Appellant] was convicted of Count 1—Rape of an Unconscious Victim (18 Pa. C.S. § 3121(a)(3)), Count 2—Rape—Forcible Compulsion (18 Pa. C.S. § 3121(a)(1)), Count 3—Sexual Assault (Pa. C.S. § 3124.1), Count 4—Indecent Assault of an Unconscious Person (Pa. C.S. § 3126(a)(4), and Count 5—Indecent Assault—without consent (Pa. C.S. § 3126(a)(1)). [Appellant] was sentenced to 60 to 120 months for Count 1 and 66 to 132 months for Count 2, to run consecutively for an aggregate sentence of 126-252 months [of]

---

[*] Former Justice specially assigned to the Superior Court.

incarceration. No further penalty was issued for the remaining counts: [Appellant] filed several different Post-Conviction Relief Act ("PCRA") petitions. [Appellant] filed a new PCRA petition on May 17, 2019 and [Appellant] filed an Appeal to the Superior Court following the denial of his latest PCRA petition.

Pursuant to Rule Pa.R.A.P. 1925(b), [Appellant] filed a Concise Statement of Errors Complained of on Appeal on November 1, 2019 from which the following is taken verbatim:

Claim #1: The PCRA court erred by rejecting [Appellant's] newly discovered fact claim. The new facts from [two witnesses'] statements would likely compel a different outcome at retrial. The Commonwealth's case hinged on the credibility of [the victim]'s sexual assault narrative as well as her claim the markings in the photographs she took of her neck and arms were caused by [Appellant's] sexual assault and not fabricated by her to bolster a false rape claim.

Claim #2: The PCRA court erred by not granting an evidentiary hearing where [the two witnesses] could've testified regarding [the victim's] reputation for dishonesty as well as specific instances of her dishonesty under Pa.R.Evid.405(a) and Pa.R.Evid. 405(b)(2).

Claim #3: The Court dismissed [Appellant's] PCRA petition because it was "patently frivolous and without support on the record[.]" This language is vague and broad, meaning it could be based on any number of findings, including an untimeliness finding. If the Court's "patently frivolous and without support on the record" finding encompasses an untimeliness finding, the Court's finding is wrong as a matter of law.

[Appellant] and the victim met through Match.com, an internet dating site, and made plans to meet in person. (TT1 16, 51). Although the victim lived in Greensburg, PA, [Appellant] pressured the victim to meet at his favorite bar, Todd's by the Bridge Tavern, in McKeesport, Allegheny County on December 15, 2006. (TT1 21, 51). The victim was unfamiliar with the Pittsburgh area, but managed to find Todd's by the Bridge Tavern and met him in its parking lot around 10:00 PM. (TT1 21-2). The victim

testified that [Appellant] did not resemble his Match.com profile pictures and she did not feel sexually attracted to him. However, she decided to stay at Todd's with [Appellant] because she had traveled over forty minutes for the date. (TT1 23).

At Todd's, the victim consumed three alcoholic drinks, which were given to her by [Appellant]. (TT1 25, TT3 56). [Appellant] purchased one of the drinks while the victim was in the restroom, which she consumed once she returned. (TT3 44). The victim testified that she began to feel that "something wasn't right" after she consumed her third and final drink. (TT1 26). [Appellant] suggested that they get something to eat, so he drove the victim to Denny's around 1:30 AM and stayed for approximately 90 minutes. However, the victim testified that she had no memory of what she ate at Denny's. (TT1 26-7). When leaving the diner, [Appellant] told the victim that it was safe to sleep at his house if she felt that she could not drive home. The victim testified that she still felt ill and unable to drive all the way home, so she agreed to go to [Appellant's] house around 3:00 AM. (TT1 27-8). Once inside [Appellant's] house, she sat on the couch and lost consciousness. (TT1 29).

The victim regained consciousness due to intense pain in her vagina and saw that [Appellant] was on top of her and penetrating her vagina with his penis. (TT1 30). She asked [him] to stop, but he grabbed her arms and held them above her head. The victim kicked [Appellant] off of her and ran into his bathroom, where she noticed that she was bleeding from her vagina and that she had pain when she urinated. (TT1 30-1). When the victim left the bathroom, [Appellant] was asleep on the floor, so she grabbed her clothes, left the house, and drove away in her car. (TT1 37).

Once on the road, the victim called her friends, the Seighmans, for help. Mr. Seighman testified that the victim was crying and panic-stricken, so he called the police on the victim's behalf. Once the victim found her way home, she fell asleep until she was awakened by a phone call from Lieutenant Doug Marcos of the Greensburg Police. (TT1 40, 117-18). Lt. Marcos asked the victim to come to Jeanette Hospital, where medical professionals conducted a rape test kit. (TT1 40). Dr. Alhashimi, the Emergency Room physician, testified that the victim had vaginal trauma, such as bleeding and mild labial swelling, as well as bruising and several abrasions on her body. (TT2 48). A blood test revealed that the victim had diphenhydramine in her system, despite never

knowingly ingesting the drug during the timeframe in question. (TT3 16). The Commonwealth's expert witness, Jennifer Janssen, a certified toxicologist, testified that even a small amount of diphenhydramine can cause drowsiness and confusion, especially when paired with alcohol. (TT2 30).

A non-jury trial occurred on this matter on May 20-21, 2007 and August 25 and 27, 2007, where [Appellant] was found guilty at the previously mentioned counts and was sentenced on November 24, 2008. [Appellant] filed a post-sentence motion on December 3, 2008, to which the Commonwealth responded on April 15, 2009. On April 17, 2009, [Appellant] filed a Second Amended Post-Sentence Motion. A hearing was held on April 30, 2009, after which [Appellant's] Motion was denied. [He] filed his first Notice of Appeal to the Superior Court on June 3, 2009 and was directed to file a Concise Statement of Matters Complained of on Appeal, pursuant to Pa.R.A.P. 1925(b), which he filed on July 1, 2009. The Superior Court affirmed the judgment on June 15, 2010.

[Appellant] filed a *pro se* PCRA petition on September 27, 2010. Counsel was appointed on October 14, 2010, and appointed counsel filed a "No Merit" Letter and Motion to Withdraw on November 30, 2010. The Motion to Withdraw was granted and the PCRA petition was dismissed on January 5, 2011. On July 9, 2014, [Appellant] filed another PCRA petition, which was dismissed on September 25, 2014.

The PCRA petition at hand was filed on May 17, 2019, to which the Commonwealth responded on June 18, 2019. The petition was dismissed on September 11, 2019, and [Appellant] filed an Appeal to the Superior Court following the denial of his latest PCRA petition . . . [Appellant] was ordered to write a Concise Statement of Errors Complained of on Appeal, which was filed on November 1, 2019.

PCRA Court Opinion, 12/3/19, at 1-5 (footnotes omitted).

On appeal, Appellant presents the three claims, which we reproduce

verbatim:

Claim #1: [Appellant's] PCRA petition is timely.

- 4 -

Claim #2: [Appellant's] newly-discovered fact claim is meritorious.

Claim #3: The PCRA court erred by not granting a PCRA hearing.

Appellant's Brief at 2.

It is well settled that we review the denial of PCRA relief to determine whether the record supports the PCRA court's findings and whether its decision is free of legal error. ***Commonwealth v. Brown***, 196 A.3d 130, 150 (Pa. 2018).

We begin with our analysis with Appellant's first claim concerning timeliness. This Court recently commented:

[T]he timeliness of any PCRA petition is a jurisdictional requisite. No court has jurisdiction to review an untimely PCRA petition. Whether a court has subject matter jurisdiction is a question of law.... It is not waivable, even by consent, and may be raised by any party or by the court, *sua sponte*, at any stage of the proceeding. [E]ven where the PCRA court does not address the applicability of the PCRA timing mandate, this Court will consider the issue *sua sponte*, as it is a threshold question implicating our subject matter jurisdiction and ability to grant the requested relief. Significantly,

[A] jurisdictional time limitation is not subject to equitable principles such as tolling except as provided by statute. Thus, the filing period is only extended as permitted; in the case of the PCRA, the time limitations are extended upon satisfaction of the exceptions found in § 9545(b)(1)(i)–(iii) and timely filing pursuant to (b)(2). As it has been established that the PCRA's time restrictions are jurisdictional, we hold that the period for filing a PCRA petition is not subject to the doctrine of equitable tolling, save to the extent the doctrine is embraced by § 9545(b)(1)(i)–(iii).

***Commonwealth v. Fahy***, 558 Pa. 313, 329, 737 A.2d 214, 222 (1999). In other words, "The PCRA's time limitations 'are

mandatory and interpreted literally; thus, a court has no authority to extend filing periods except as the statute permits.'" ***Commonwealth v. Lee***, 206 A.3d 1, 11, 2019 PA Super 64 *8 (2019) (*en banc*).

***Commonwealth v. Beatty***, 207 A.3d 957, 961–62, ***appeal denied***, 218 A.3d 850 (Pa. 2019) (some citations omitted). In sum, the PCRA's time bar "implicate[s] our jurisdiction and may not be altered or disregarded in order to address the underlying merits of a claim." ***Commonwealth v. Greco***, 203 A.3d 1120, 1124 (Pa. Super. 2019).

It's well settled that any PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final." 42 Pa.C.S.A. § 9545(b)(1). A PCRA petition may be filed beyond the one-year period only if the petitioner alleges and proves one of the following three exceptions:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

***Id.***

Any petition attempting to invoke an exception "shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2). To satisfy the newly discovered fact exception, a petitioner must allege and prove that 1) the facts upon which the claim was predicated were unknown and 2) could not have been ascertained by the exercise of due diligence." *Commonwealth v. Brensinger*, 218 A.3d 440, 448 (Pa. Super. 2019) (*en banc*) (citation omitted). "Due diligence requires the petitioner take reasonable steps to protect his own interests." *Id.*

Appellant concedes that his petition is facially untimely. *See* Appellant's Brief at 36. However, Appellant argues that he has demonstrated an exception to the time bar because "the facts comprising [Appellant's] newly-discovered fact claim weren't 'ascertainable' or 'obtainable' before trial, even with the exercise of due diligence." *Id.* at 37. Appellant asserts that he learned of the "new facts" on November 7, 2018, after communicating with the victim's ex-husband; Appellant's third PCRA petition was filed approximately six months later, on May 17, 2019. The facts to which Appellant refers consist of testimony from: (1) the victim's ex-husband, who divorced the victim in 2006 and "is cognizant of [the victim's] reputation for dishonesty, particularly at the time when she made her allegations against [Appellant] in December 2006"; and (2) the victim's former employer, who "agreed to testify at a PCRA hearing to discuss specific instances of how [the

victim] lied to her and her staff," and "hoodwinked" and embezzled from her employer "in the late 1990s." **See** Appellant's Brief at 30-33.

Appellant concedes that "no one from [his] defense team contacted" the victim's ex-husband prior to trial. **See** Appellant's Brief at 32. However, he maintains that the failure to interview the ex-husband or attempt to interview the ex-husband would not have been successful because the ex-husband indicated he would not have cooperated at the time. **Id.** Thus, Appellant maintains that the testimony of the victim's ex-husband (which led him to the former employer and her testimony) were not ascertainable prior to Appellant's trial "even with the exercise of due diligence." **Id.** at 37. Again, Appellant concedes that he did not contact the victim's ex-husband and former employer prior to trial. **Id.** at 32-33. He emphasizes, "even if trial, appellate, and initial-review PCRA counsel had contacted [the ex-husband], he would not have spoken to them, meaning none of them would have learned about [the victim's] embezzlement, credit card fraud, and pathological tendency to lie, cheat and con people." **Id.** at 40. Appellant states that without the ex-husband's statements, "no prior counsel would have known to interview [the prior employer] to verify the embezzlement." **Id.** at 40-41. Appellant claims the statements of the victim's ex-husband and former employer would have compelled a different verdict in Appellant's rape case. **Id.** at 41. We are not persuaded by Appellant's argument.

Our Supreme Court has "emphasize[d] that it is the petitioner who bears the burden to allege and prove that one of the timeliness exceptions applies." ***Commonwealth v. Marshall***, 947 A.2d 714, 719 (Pa. 2008). With regard to an assertion of newly discovered facts, the Court continued:

> Exception (b)(1)(ii) requires [a] petitioner to allege and prove that there were '*facts*' that were 'unknown' to him and that he could not have ascertained those *facts* by the exercise of due diligence. The focus of the exception is on [the] newly discovered *facts,* not on a newly discovered or newly willing source for previously known facts. [T]his Court [has] rejected the petitioner's argument that a witness's subsequent admission of alleged facts brought a claim within the scope of exception (b)(1)(ii) even though the facts had been available to the petitioner beforehand.

***Id.*** at 720 (emphasis in original, citations and footnote omitted).

Appellant focuses on the identities of the victim's ex-husband and former employer relative to the victim's acts of dishonesty and theft, and the details of which he learned when he communicated with the ex-husband, and consequently the former employer, a decade later. However, section 9545(b)(1)(ii) requires that Appellant allege and prove facts that were unknown to him and could not have ascertained by the exercise of due diligence. Significantly, in his prior appeal to this Court, Appellant raised facts attendant to the victim's credibility and *crimen falsi*. ***See Commonwealth v. Kennedy***, 934 WDA 2009 (June 15, 2010) (unpublished memorandum), at *7-11. In affirming Appellant's judgment of sentence, we found that the credibility of the victim and her *crimen falsi* convictions "would not have resulted in a different verdict." ***Id.*** at 10-11.

Additionally, and independent of the merits, the PCRA court rejected

Appellant's claim of newly discovered evidence, stating:

[Appellant] cites to several "new" pieces of evidence, including testimony from . . . the victim's ex-husband, that the victim has a reputation for dishonesty and has committed embezzlement and credit card fraud. [Appellant] also proffers testimony from [the] owner of [the victim's employer], who alleges that the victim embezzled a large amount of money from her company in the late 1990s. [Appellant] also references a criminal case against the victim which occurred in Westmoreland County in 2006, shortly before these crimes [of which Appellant was convicted] occurred.

[Appellant] states that he was not aware of these facts until November 7, 2018 and that these facts could not have been discovered because [the ex-husband] was not contacted by [Appellant] or his attorney until recently. [The ex-husband] connected [Appellant] to [the victim's former employer], so [Appellant] also alleges that her testimony was not obtainable prior to the conclusion of his trial in 2007. He also claims that even if [the ex-husband] had been contacted [prior to trial], his testimony would still unobtainable because [the ex-husband] would have refused to testify because he feared retaliation by the victim.

These arguments fail for several reasons. [Appellant] knew that the victim had a previous husband because she told [Appellant] that she was going through a divorce in an email they exchanged on Match.com. (TT1 20-1). Yet, [Appellant] admits that no one from his defense team in 2007 to now even attempted to contact [the ex-husband]. Therefore, [the ex-husband] was an obvious, available source of information in 2007 that was ignored. Because [the victim's ex-husband] was never approached by [Appellant], it is irrelevant that he claims that he would not have testified in 2007. [The ex-husband's] testimony regarding the criminal charge against the victim in 2006 could easily have been discovered without his testimony because criminal charges are public record. Likewise, [the employer's] testimony could have been uncovered through reasonable diligence by [Appellant] before the conclusion of trial because it is not unreasonable to investigate a key witness' employment history. Just because [Appellant] was not told directly of [the witness's] testimony does not mean that it was unobtainable in 2007.

PCRA Court Opinion, 12/3/19, at 6-7 (footnote and citations omitted).

Although the PCRA court noted that "even if [Appellant's alleged new] evidence was truly unobtainable until after [Appellant's] trial, it is purely impeachment testimony," *id.* at 7, a lack of jurisdiction precludes a merits analysis.[1]  Upon review, we conclude that Appellant's third PCRA petition is untimely because Appellant failed to demonstrate the existence of facts that were unknown to him and his exercise of due diligence in discovering those facts.  Accordingly, we affirm the denial of relief by the PCRA court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/2020

---

[1] The PCRA court stated that it viewed Appellant' third petition as timely "so as to address the petition's merits."  PCRA Court Opinion, 12/3/19, at 5. However, an appellate court may affirm on any basis.  ***See Commonwealth v. Lee***, 947 A.2d 199 (Pa. Super. 2008).